IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **MARY IMMACULATE NASSALI, et. al.,** | * * * | |
| Plaintiffs/Counter-Defendants. | * * | Civil Action No.: CBD-19-2444 |
| v. | * * | |
| **JOHN KAMYA, et al.** | * * | |
| Defendants/Counter-Claimants. | * * * | |
| | ***** | |

## MEMORANDUM OPINION

Before the Court is Counter-Defendant Rita Kamya Estiphanos' Motion to Dismiss ("Counter-Defendant's Motion"), ECF No. 49. The Court has reviewed Counter-Defendant's Motion, the opposition, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons set forth below, the Court DENIES WITHOUT PREJUDICE Counter-Defendant's Motion.

### I.   Factual Background

Previously, John Kamya and Daniline Kamya ("Counter-Claimants") filed a motion for summary judgment which the Court denied without prejudice. ECF No. 40. A detailed review of the facts of this case are set forth in the Court's February 6, 2020 Memorandum Opinion ("Previous Memorandum"). ECF No. 40.

Prior to the Court's Previous Memorandum, Counter-Defendants filed an Answer and Counterclaim to Mary Immaculate Nassali's ("Plaintiff") Complaint. ECF No. 24. Aside from naming Plaintiff as a Counter-Defendant in the Counterclaim, Defendants also named Anthony

1

Morgan Kamoga and Rita Kamya Estaphanos as Counter-Defendants ("Counter-Defendants"). *See* Answer to Counts I, II, and II of Plaintiff's Complaint, Counterclaim & Jury Demand, ("Counterclaim"), ECF No. 24.

According to Counter-Claimants, "the claims against [them] are false and part of an elaborate scheme to support a fraudulent asylum application for Counter-Defendant Nassali to remain in the United States and to extort funds from [Counter-Claimants]." Countercl. ¶ 2.[1] Counter-Claimants allege that Counter-Defendant Nassali was treated as a guest in their home, as evidenced by her attendance at a family vacation, various social events and concerts at the Counter-Claimants' expense. *Id.* at ¶ 2. After staying with Counter-Claimants for about six months, Counter-Claimants allege that a breakdown in the relationship with Counter-Defendant Nassali began when she refused to return to Uganda as the expiration of her B1/B2 tourist visa approached. *Id.* at ¶¶ 17, 23.

According to Counter-Claimants, Counter-Defendant Nassali informed them that she began a relationship with Counter-Defendant Kamoga and would not return to Uganda because she was seeking asylum based on her sexual orientation. *Id.* at ¶ 25. Counter-Claimant John Kamya expressed his disagreement with Counter-Defendant Nassali's decision "because he knew that she was not a lesbian and had not been persecuted in Uganda for being lesbian and made it clear that he would have no part in a fraudulent asylum application." *Id.*

At some point, Counter-Defendant Nassali allegedly began calling people in Uganda and averred that "[Counter-Claimants] were mistreating her, that they would not let her meet her boyfriend, and that they would not let her out of the home. *Id.* at 28. According to Counter-

---

[1] Counter-Claimants filed both the Answer and Counterclaim within one pleading, therefore, there are two sets of sequential numbering within the pleading. Citations to the Counterclaim refer to the second set of sequential numbers.

Claimants, Counter-Defendant Nassali's comments about them were damaging to Counter-Claimant John Kamya's reputation. *Id.* at ¶ 31.[2]

After Counter-Defendant Nassali finally left Counter-Claimants' home, she and Counter-Defendant Kamoga allegedly "devised a scheme for her to remain in the U.S. and to extort money from [Counter-Claimants]." *Id.* at ¶ 30. Counter-Claimants allege that Counter-Defendant Estiphanos organized a call with Counter-Claimant John Kamya's family to:

> [Discuss] a plan to damage [Counter-Claimant John Kamya's] reputation as the cultural head or head trustee of the family and to end the [Counter-Claimant John Kamya's] marriage and gain access to [his finances]. During this call, Counter-Defendant [Estiphanos] stated that [Counter-Claimant Daniline Kamya] forced [Counter-Defendant Nassali] to work without pay, confiscated her phone, and barred her from going outside, and she was abusive to [Counter-Claimant John Kamya] and would cause him a miserable death like his father.

*Id.* at ¶ 31. Counter-Claimants believe that Counter-Defendants made other intentionally false statements to third parties. *Id.* at ¶ 32.

Allegedly, the statements made by Counter-Defendants "spread throughout [Counter-Claimants'] extended family, fundamentally damaging the foundation of trust and shaming the entire lineage across the world, including the United States." *Id.* at ¶ 34. Allegedly:

> The family disruption was of such a magnitude that the family elders sent letters generally expressing concern regarding the accusation of enslavement and extortion scheme. Such a reaction from elders is so rare that [Counter-Claimant John Kamya] cannot recall another instance among the Kamyas, and rarely observed such a reaction amongst the other family lineages in Uganda.

---

[2] Counter-Claimant John Kamya avers that he is the "cultural head or primary trustee of his extended family in Uganda which comprises of over 1,000 people all around the world, including the United States. As cultural head, he represents his ancestors and the family lineage and any stain upon his reputation taints the entire lineage and erodes the cohesion of the entire extended family." Countercl. ¶ 10.

*Id.* As a result of these alleged statements, Counter-Claimants believe Counter-Claimant John Kamya's business agreements were damaged, including the cancellation of a multimillion project overseas. *Id.* at ¶ 37. According to Counter-Claimants, the alleged slander and defamation directly affect Counter-Claimant John Kamya's work as well as:

> [H]is ability to earn a living, plus security clearance implications and complications, a reduced ability to raise funds to run his businesses, and erosion of his financial ability to look after his close and extended family members, who have hitherto been relying on him for financial, medical, educational, and other support.

*Id.* at ¶ 38.

Counter-Claimants filed suit against Counter-Defendants for: (1) Defamation; (2) Invasion of Privacy – False Light; (3) Tortious Interference with Economic Relations; (4) Civil Conspiracy; (5) Breach of Contract; and (6) Abuse of Process. *Id.* at ¶ 49–67.

## II.     Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Valencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). In doing so, the Court must keep in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

4

556 U.S. at 678–79. *See Valencia*, 2012 WL 6562764, at *4 (discussing the standards of *Iqbal* and *Twombly*.).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court ruling on a motion to dismiss generally "must take all of the factual allegations in the complaint as true," however, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 554); *See also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

### III. Analysis

Counter-Defendant filed a three-page *pro-se* motion to dismiss, with only one paragraph providing an analysis.[3] Counter-Def.'s Mot. 3, ECF No. 49. Counter-Defendant Estiphanos avers that Counter-Claimants "failed to, show clear and convincing evidence or highlight any instances in which [Counter-Defendant Estiphanos] was: part of a scheme to extort funds and committed acts of; defamation, false light, civil conspiracy, tortious interference with business relations, breach of contract and abuse of process." *Id.* Counter-Claimants contend that Counter-Defendant Estiphanos' motion is frivolous and does not meet the minimum standard of review for a motion to dismiss. *See* Mem. of Points and Auth. in Opp'n To Third Party Def. Rita

---

[3] "A document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Wilson v. Wexford Health Sources, Inc.*, No. GLR-18-2175, 2020 WL 510332, at *4 (D. Md. Jan. 31, 2020) ("[When reviewing a *pro se* pleading] the Court will liberally construe the pleadings, which are held to a less stringent standard than pleadings drafted by lawyers."). However, even a *pro se* pleading must be "nonfrivolous," and not cause "unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b).

Kamya Estiphanos' Mot. to Dismiss, ("Countercls.' Mem. of Points & Auth. in Opp'n") 4, ECF No. 51.  Counter-Claimants also aver that Counter-Defendant Estiphanos added facts that were outside of the Complaint, which the Court cannot consider.  *Id.* at 5.

As stated under Fed. R. Civ. P. 8(a) a complaint must contain "a short and plain statement of the claim that that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The complaint must only make a plausible claim for relief.  *Iqbal*, 556 U.S. at 678–79.

In this case, Counter-Defendant Estiphanos places a higher burden on Counter-Claimants than required by necessitating them to show by "clear and convincing evidence" that Counter-Defendant Estiphanos was: part of a scheme to extort funds and omitted acts of; defamation, false light, civil conspiracy, tortious interference with business relations, breach of contract and abuse of process."  Counter-Def.'s Mot. 3.  At this stage of litigation, Counter-Claimants need not show by *clear and convincing evidence* that Counter-Defendants committed the aforementioned.  Counter-Claimants must only follow the requirements under Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  The Court finds that Counter-Defendant Estiphanos fails to sufficiently address whether Counter-Claimants met their legal burden.  For this reason, standing alone, the motion to dismiss must be denied.

Moreover, Counter-Defendant Estiphanos broadly challenges the Counterclaim without specifically providing a legal analysis or explanation as to which causes of action she challenges.  There was no attempt to analyze the legal elements of any causes of action to the facts asserted by Counter-Claimants.  Without providing a more fulsome and pointed legal analysis, the Court cannot determine what portion of the Counterclaim it is that Counter-Defendant Estiphanos challenges, and whether her arguments are valid.  Although a *pro se* pleading is to be construed

liberally, *Erickson*, 551 U.S. at 94, neither the Court nor Counter-Claimants should be put in a position to guess the potential legal arguments from Counter-Defendant's ambiguous motion.

Lastly, Counter-Defendant Estiphanos provides a statement of facts and exhibits which were not referenced in the Counterclaim. At the motion to dismiss stage, a court may not consider facts outside of a complaint unless the motion is converted to a motion for summary judgment. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1473 (1991); Fed. R. Civ. P. 12(d). Once a court decides to include matters outside the pleadings and convert the motion to a summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Counter-Claimants have not been given an opportunity to respond to a motion for summary judgment. They were served an ambiguous motion which not only conflates the legal standard on a motion to dismiss, but also does not specifically identify which portions of the Counterclaim are invalid.

Given Counter-Defendant Estiphanos' status as a *pro se* litigant, the Court shall deny the motion *without prejudice* to provide her another opportunity to resolve the issues discussed in this opinion. Should Counter-Defendant Estiphanos wish to file a revised motion to dismiss, such motion must be filed no later than September 25, 2020. If Counter-Defendant Estiphanos wishes to include facts and evidence outside of the Complaint, she must instead file a motion for summary judgment in compliance with Fed. R. Civ. P. 56.

## IV.     Conclusion

For the reasons set forth above, Defendants' Motion is DENIED WITHOUT PREJUDICE.


September 3, 2020                                         /s/
                                                  Charles B. Day
                                                  United States Magistrate Judge


CBD/hjd